**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| JEFFREY BAKER, Individually and for Others Similarly Situated, | Case No. |
| Plaintiffs, | Jury Trial Demanded |
| v. | Collective Action Pursuant To 29 U.S.C. § 216(b) |
| CAJUN ENERGY SERVICES AND RENTALS, LLC | |
| Defendant. | |

**ORIGINAL COMPLAINT**

1.      Jeffrey Baker (Baker) brings this lawsuit to recover unpaid overtime wages and other damages from Cajun Energy Services and Rentals, LLC (Cajun) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      During the relevant period, Cajun utilized the services of oilfield personnel like Baker to work on its behalf.

3.      Many of the oilfield workers Cajun employed, including Baker, were staffed to Cajun by third-party entities.

4.      Baker, and the other oilfield personnel like him who worked for, or on behalf of Cajun, regularly worked more than 40 hours a week.

5.      But Baker and the other oilfield workers like him were not paid overtime.

6.      Instead of paying overtime as required by the FLSA, Cajun improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7.      Baker brings this collective action to recover the unpaid overtime wages and other damages owed to him and other oilfield workers like him.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10.     Cajun conducts substantial business operations in this District and Division.

11.     Baker worked for Cajun within this District and Division.

12.     Similarly situated potential class members worked for Cajun in this District and Division.

## THE PARTIES

13.     During the relevant time period, Baker worked for Cajun providing flowback and well testing services.

14.     Throughout his employment, Cajun paid Baker a day-rate with no overtime compensation and classified him as an independent contractor.

15.     Baker's consent to be a party plaintiff is attached as <u>Exhibit A</u>.

16.     Baker brings this action on behalf of himself and all other similarly situated oilfield personnel who worked for, or on behalf of Cajun, who were classified as independent contractors and paid a day-rate with no overtime compensation.

17.     Baker and the oilfield workers like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

18.     The class of similarly situated employees sought to be certified is defined as follows:

> **All oilfield personnel that worked for Cajun Energy Services and Rentals, LLC while classified as independent contractors and paid a day-rate during the last three years. (the "Day Rate Workers")**

19.     **Cajun Energy Services and Rentals, LLC** is limited liability corporation doing

business in Texas and may be served by serving its registered agent for service of process, Robert David Phillips, Jr., 7515 Jefferson Hwy., Suite 310, Baton Rouge, Louisiana 70806, or wherever it may be found.

### COVERAGE UNDER THE FLSA

20.     At all times hereinafter mentioned, Cajun has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21.     At all times hereinafter mentioned, Cajun has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22.     At all times hereinafter mentioned, Cajun has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23.     Cajun has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

24.     Cajun's annual gross volume of sales made, or business done, has exceeded $500,000.00 in each of the past three years.

25.     At all relevant times hereinafter mentioned, Baker and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

26.     At all relevant times hereinafter mentioned, Cajun treated Baker and the Day Rate Workers as employees and uniformly applied their day-rate pay practice to Baker and the Day Rate Workers.

27.     The misclassification of Baker and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

28.     Cajun provides flow back and well site testing support for the oil and gas industry around the Permian Basin.

29.     To provide services to many of its customers, Cajun retains workers to perform flowback and well site testing services on its behalf.

30.     During the relevant period, Cajun contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, like Baker.

31.     Cajun and the third-party entities who staffed oilfield personnel to Cajun to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

32.     Cajun and the third-party entities who staffed oilfield personnel to Cajun to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

33.     Cajun is a joint employer of the oilfield personnel staffed to it by the third-party entities.

34.     Many of the oilfield personnel staffed to Cajun, including Baker, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class of Day Rate Workers.

35.     Even if their job titles and precise job duties differed, Cajun subjected Baker and the other oilfield workers like him to the same or similar illegal pay practices for similar work.

36.     Specifically, Cajun classified all similarly situated oilfield workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

37.     Cajun uniformly failed to pay overtime for the overtime hours Baker and the Day Rate Workers.

38.     For example, during the relevant period Baker worked for Cajun as a Flowback Operator.

39.     Throughout his employment, Cajun classified Baker as an independent contractor and paid him on a day-rate basis.

40.     Cajun directed Baker to work 12 (or more) hours a day for as many as seven days in a week.

41.     Baker worked well in excess of 40 hours each week while employed by Cajun, often for weeks at time.

42.     The work Baker performed was an essential part of Cajun's core business.

43.     During Baker's employment with Cajun and while he was classified as an independent contractor, Cajun exercised control over all aspects of his job.

44.     Cajun did not require any substantial investment by Baker for him to perform the work required of him.

45.     Cajun controlled Baker's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

46.     Baker was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

47.     While working for Cajun, Cajun controlled all the significant or meaningful aspects of the job duties performed by Baker.

48.     Cajun exercised control over the hours and locations Baker worked, tools and equipment used, and rates of pay received.

49.     No real investment was required of Baker to perform his job.

50.     More often than not, Baker utilized equipment provided by Cajun to perform his job duties.

51.     Baker did not provide the significant equipment he worked with on a daily basis.  Cajun or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Baker worked.

52.     Baker did not incur operating expenses like rent, payroll, marketing, and insurance.

53.     Baker was economically dependent on Cajun during his employment with Cajun.

54.     Cajun set Baker's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Cajun.

55.     Cajun directly determined Baker's opportunity for profit and loss.

56.     Baker's earning opportunity was based on the number of days Cajun scheduled him to work.

57.     Very little skill, training, or initiative was required of Baker to perform his job duties.

58.     Indeed, the daily and weekly activities of Baker and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Cajun.

59.     Virtually every job function was pre-determined by Cajun, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

60.     The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Cajun's policies, procedures, and directives.

61.     Baker and the Day Rate Workers performed routine job duties that were largely dictated by Cajun.

62.     Baker was not employed by Cajun on a project-by-project basis.

63.     In fact, while Baker was classified as an independent contractor, he was regularly on call for Cajun and was expected to drop everything and work whenever needed.

64.     All of the Day Rate Workers working for, or on behalf of Cajun, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day

activities performed by each person, regardless of the third-party entity they were staffed through.

65.     The Day Rate Workers working for, or on behalf of Cajun, also worked similar hours as Baker and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

66.     All of the Day Rate Workers working for, or on behalf of Cajun, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

67.     Instead of paying them overtime, Cajun paid Baker and the Day Rate Workers a day-rate and misclassified them as independent contractors.

68.     Cajun denied Baker and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

69.     Baker and the Day Rate Workers were never paid on a salary basis. They never received any guaranteed weekly compensation from Cajun irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

70.     Cajun's policy of classifying Baker and the Day Rate Workers like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

71.     It is undisputed that the Day Rate Workers are working long hours in the oilfield.

72.     Because Baker and the Day Rate Workers like him were misclassified as independent contractors by Cajun, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

73.     Cajun's day-rate system violates the FLSA because Baker and the Day Rate Workers like him did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

74.     As set forth herein, Cajun has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

75.     Cajun knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Baker and the Day Rate Workers like him overtime compensation.

76.     Cajun's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

77.     Accordingly, Baker and the Day Rate Workers like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

78.     The illegal pay practices Cajun imposed on Baker were likewise imposed on the Day Rate Workers working for, or on behalf of, Cajun through third-party entities.

79.     Numerous individuals were victimized by Cajun's pattern, practice, and policy which is in willful violation of the FLSA.

80.     Based on his experiences and tenure with Cajun, Baker is aware that such illegal practices were imposed on the members of the Putative Class.

81.     Baker and the Day Rate Workers like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

82.     Cajun's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Day Rate Workers like Baker.

83.     Baker's experiences are therefore typical of the Day Rate Workers who worked for, or on behalf of, Cajun.

84.     The specific job titles or precise job locations of the various members of the Day Rate Workers do not prevent collective treatment.

85.     Baker has no interests contrary to, or in conflict with, the members of the Day Rate Workers. Like each member of the Day Rate Workers, Baker has an interest in obtaining the unpaid overtime wages owed under federal law.

86.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

87.     Absent this action, the Day Rate Workers likely will not obtain redress of their injuries and Cajun will reap the unjust benefits of violating the FLSA.

88.     Furthermore, even if some of the Day Rate Workers could afford individual litigation against Cajun, it would be unduly burdensome to the judicial system.

89.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Day Rate Workers and provide for judicial consistency.

90.     Baker's claims are similar to the claims of the Day Rate Workers who worked for, or on behalf of, Cajun who were classified as independent contractors and paid a day-rate with no overtime compensation. Baker and the other oilfield workers like him sustained damages arising out of Cajun's illegal and uniform employment policy.

91.     Baker knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

92.     Even if the number of hours worked by the oilfield workers like Baker varies, the proof and method for calculating damages is common.

93.     Further, there is no detraction from the common nucleus of liability facts.

**JURY DEMAND**

94.    Baker demands a trial by jury.

**RELIEF SOUGHT**

95.    WHEREFORE, Baker prays for judgment against Cajun as follows:

a.    An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Day Rate Workers who Cajun classified as independent contractors and paid a day-rate during the last three years;

b.    For an Order pursuant to Section 16(b) of the FLSA finding Cajun liable for unpaid back wages due to Baker and the Day Rate Workers like him for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  /s/ Michael A. Josephson
      **Michael A. Josephson**
      Texas State Bar No. 24014780
      **Andrew Dunlap**
      Texas State Bar No. 24078444
      **Richard M. Schreiber**
      Texas State Bar No. 24056278
      **JOSEPHSON DUNLAP, LLP**
      11 Greenway Plaza, Suite 3050
      Houston, Texas 77046
      713-352-1100 – Telephone
      713-352-3300 – Facsimile
      mjosephson@mybackwages.com
      adunlap@mybackwages.com
      rschreiber@mybackwages.com

      **AND**

      **Richard J. (Rex) Burch**
      Texas State Bar No. 24001807
      **BRUCKNER BURCH PLLC**
      8 Greenway Plaza, Suite 1500
      Houston, Texas 77046
      713-877-8788 – Telephone
      713-877-8065 – Facsimile
      rburch@brucknerburch.com

      **ATTORNEYS IN CHARGE FOR PLAINTIFF**

11